THE PEOPLE OF THE STATE OF NEW YORK, by ROBERT P. WHALEN, as Commissioner of the Department of Health, et al., Appellants, v WOMAN'S CHRISTIAN ASSOCIATION OF JAMESTOWN INC., et al., Respondents.

Third Department, February 17, 1977

*Louis J. Lefkowitz, Attorney-General (Kenneth J. Connolly* and *Ruth Kessler Toch* of counsel), for appellants.

*Hinman, Straub, Pigors & Manning (Stephen M. Cleary* of counsel), for Chautauqua Region Hospital Service Corporation, respondent.

*Costello, Cooney & Fearon (Franklin S. Bonem* of *Proskauer, Rose, Goetz & Mendelsohn* of counsel), for Woman's Christian Association of Jamestown, Inc., respondent.

MAIN, J. Defendant Woman's Christian Association of Jamestown, Inc., is the sole owner and operator of Woman's Christian Association Hospital in Jamestown, New York (hereinafter the hospital). Pursuant to section 2807 of the Public Health Law and by contract dated August 31, 1973, the hospital has accepted from respondent Chautauqua Region Hospital Service Corporation (hereinafter Blue Cross) direct payments in amounts equal to the reimbursement rates set by the Commissioner of Health and the Superintendent of Insurance as full payment for all services rendered to Blue Cross subscribers. However, having sustained increasing operating losses in the past few years, including a deficit of $285,326 in 1975, and having been notified that its reimbursement rate from Blue Cross for 1976 would be frozen at the 1975 level with no increase in said rate foreseeable, the hospital notified Blue Cross on January 8, 1976 that in accordance with its contractual right it was terminating its agreement with Blue Cross upon nine months' notice effective October 15, 1976. Thereafter, in the interests of financial stability, hospital policy would be to bill all its patients directly on the basis of the hospital's costs for services rendered. As a result, Blue Cross subscribers would have to be reimbursed by the insurer at the fixed reimbursement rates, and they would further have to absorb personally any costs in excess thereof.

Seeking to permanently enjoin the implementation of this policy by the hospital, the State, on October 8, 1976 and just one week before the proposed contract termination, commenced the present action against the hospital and Blue Cross by order to show cause. A temporary restraining order enjoining the hospital from increasing its charges pending the

termination of the State's motion for a preliminary injunction was then issued, and, thereafter, on December 3, 1976, said motion was denied by Special Term upon a finding that section 2807 of the Public Health Law does not directly control hospital charges. This appeal ensued.

The fundamental question presented in the underlying action herein is whether, as argued by plaintiff, a hospital violates section 2807 of the Public Health Law by charging subscribers to Blue Cross and other prepaid hospital insurance plans regulated by article IX-C of the Insurance Law amounts in excess of the reimbursement rates fixed pursuant to that law. To prevail here and gain a reversal of the order of Special Term, plaintiff must establish its clear right to a preliminary injunction by demonstrating both that it is likely to succeed on the merits in the underlying action and that irreparable injury will result absent the granting of the preliminary injunction *(Brand v Bartlett,* 52 AD2d 272; *Graves v Lombardi,* 42 AD2d 700).

In our view, plaintiffs have not carried this burden, and we look initially to the statute in question (Public Health Law, § 2807) in making this determination and find that it deals with payments for hospital and health-related services made by government agencies, article IX-C corporations, such as Blue Cross, and health maintenance organizations under article 44 of the Public Health Law. Responding to skyrocketing medical costs, the Legislature amended this statute in 1969 by what was known as the Hospital Cost Control Law (L 1969, ch 957) wherein the criteria for establishing the rates of reimbursement for various medical services was changed from rates "reasonably related to the costs of providing such service" (Public Health Law, § 2807, subd 3, as added by L 1965, ch 795, § 1) to rates "reasonably related to the costs of efficient production of such service" (Public Health Law, § 2807, subd 3, as amd by L 1969, ch 957, § 4). Manifested also in the statement of legislative findings and purpose contained in section 2 of the 1969 enactment, this strong concern for efficiency makes unmistakably clear the legislative intent to control medical costs by means of the amendment.

Such being the case, we now turn to plaintiffs' contention that the hospital's proposed billing policy is violative of the Hospital Cost Control Law because allegedly the Legislature by enacting said law intended to place absolute ceilings upon the rates which hospitals can charge for services rendered.

Without knowing precisely what was in the minds of the individual legislators at the time of enactment and even assuming *arguendo* that the imposition of absolute ceilings is the most feasible method of controlling hospital costs, we must nonetheless reject plaintiffs' argument and be guided by the language ultimately adopted where, as here, it is clear and free from ambiguity *(Matter of New York Tel. Co. v Public Serv. Comm.,* 286 App Div 28, affd 309 NY 569; McKinney's Cons Laws of NY, Book 1, Statutes, § 76). In this instance, the statute plainly provides only a system of indirect controls over medical costs by expressly establishing procedures solely to limit the rates of payments made for health services by corporations such as Blue Cross. No mention is made therein of maximum hospital charges, and the law clearly contains no prohibition upon a hospital's charging individual patients for costs in excess of their respective insurance coverages. Accordingly, it being incumbent upon the courts to give effect to legislation as it is written, and not as they or others might think it should be written *(Allen v Minskoff,* 38 NY2d 506; *Lawrence Constr. Corp. v State of New York,* 293 NY 634; McKinney's Cons Laws of NY, Book, 1, Statutes, § 73), we must conclude that plaintiffs have failed to demonstrate that they will likely succeed on the merits in the underlying action.

Similarly, plaintiffs have likewise not shown that irreparable harm will result to Blue Cross and its subscribers should the preliminary injunction not be granted. During the pendency of the underlying action, potential patients of the hospital are to be notified of the new billing policy in an explanatory letter which will further suggest that they may prefer to seek admission to another hospital, of which there are four in the immediate area, which accept direct Blue Cross reimbursement as payment in full for services rendered. Moreover, should plaintiff ultimately prevail and a permanent injunction be issued, the hospital has agreed to refund all payments by individual Blue Cross subscribers in excess of the reimbursement rates.

In conclusion, therefore, we hold under all of the above circumstances that plaintiffs have failed to establish their clear right to a preliminary injunction and Special Term's order must be affirmed.

The order should be affirmed, with costs to defendant Woman's Christian Association of Jamestown, Inc.

KOREMAN, P. J., SWEENEY, KANE and MAHONEY, JJ., concur.

Order affirmed, with costs to defendant Woman's Christian Association of Jamestown, Inc.