■ In the Matter of TINA MARIE W. — Order unanimously modified and, as modified, affirmed, without costs, in accordance with the following memorandum: This appeal involves the issue of an incarcerated father's rights in an abandonment proceeding pursuant to section 384-b (subd 4, par [b]) of the

Social Services Law. Respondent was adjudicated the father of Tina Marie, who was born on January 9, 1977. Respondent father never married Tina's mother but lived with her and Tina for a few months subsequent to Tina's birth. Tina was placed in foster care when she was two months old and has remained with the same foster parents since that time. The foster parents are apparently interested in adopting Tina. Respondent visited Tina approximately five times while Tina was in the care of her foster parents (over two and one-half years prior to the abandonment hearing). He failed to provide any support for Tina and any contact he had with Tina was initiated by Tina's mother. In July, 1978 respondent was arrested for car theft in Oklahoma and is currently serving a five-year term of imprisonment in that State. While incarcerated, he received notification of the abandonment hearing and an attorney was appointed to represent him. As a result of the hearing, Tina was adjudicated an abandoned child and her custody and guardianship were committed to the Commissioner of the Erie County Department of Social Services. Respondent appeals from that determination, alleging that his rights were violated because he did not personally appear at the hearing. Section 384-b (subd 4, par [b]) of the Social Services Law provides that: "An order committing the guardianship and custody of a child pursuant to this section shall be granted only upon one or more of the following grounds * * * (b) The parent or parents, whose consent to the adoption of the child would otherwise be required in accordance with section one hundred eleven of the domestic relations law, abandoned such child for the period of six months immediately prior to the date on which the petition is filed in the court". Under the language of section 384-b (subd 4, par [b]) of the Social Services Law, the respondent in an abandonment action must be a person whose consent to the adoption of a child is required under section 111 of the Domestic Relations Law. These consent requirements contain an exception for parents who have lost their civil rights pursuant to the Civil Rights Law (Domestic Relations Law, § 111, subd 2, par [d]). Under section 79 of the Civil Rights Law a person, who is serving a term of imprisonment for a term less than for life or for any indeterminate term with a minimum of one day and a maximum of life, forfeits all civil rights during the term of the sentence. According to the statutory language, respondent, due to his incarceration in Oklahoma, is not a person whose consent would be required for the adoption of a child. Therefore, he does not fit within the statutory definition of abandonment (see *Matter of Sonia V. R.,* 97 Misc 2d 694, affd 74 AD2d 1009; *Matter of Malik,* 108 Misc 2d 774), and he cannot be a respondent in this action. However, the statute is worded in disjunctive terms ("[t]he parent or parents, whose consent") and, therefore, the abandonment action can be maintained against the mother. Although the father cannot be found to have abandoned his child while incarcerated, the mother has legitimately been found to have abandoned Tina. This result is consonant with the legislative history and intent of section 384-b of the Social Services Law. The best interests of the child mandate that his/her status be finally determined rather than remain in limbo (see Bill Jacket, L 1976, ch 666). By allowing an action in abandonment against the mother in this case, the child will be freed for adoption since the father's consent to the adoption is not required as long as he remains incarcerated (see Domestic Relations Law, § 111). Freeing the child for adoption is one of the express purposes of the statute (Social Services Law, § 384-b). Additionally, this result comports with the present trend toward divisible custody rights necessitated by parents' divergent circumstances. The parents' custody rights are treated as separate and distinct as opposed to a unitary interest. Furthermore, we are constrained to adhere to the clear wording of the statute (McKinney's Cons Laws of NY,

Book 1, Statutes, § 76). The wisdom of the statute is not subject to judicial review (*Nettleton Co. v Diamond*, 27 NY2d 182, mot for rearg den 28 NY2d 539, app dsmd 401 US 969). A statute must be read and given effect as it is written, not as the court may think it should or would have been written if the Legislature had envisaged all of the problems and complications which might arise in the course of its administration (*People v Woman's Christian Assn. of Jamestown*, 56 AD2d 101; McKinney's Cons Laws of NY, Book 1, Statutes, § 73). The statute (Social Services Law, § 384-b, subd 4, par [b]) clearly states "[t]he parent or parents, whose consent to the adoption of the child would otherwise be required" under section 111 of the Domestic Relations Law. In referring to the consent requirements of section 111 of the Domestic Relations Law, the Legislature was clearly aware of the exceptions to these requirements and we cannot overlook the clear mandate of the statute. Accordingly, the order of Family Court is modified by deleting the reference in the first decretal paragraph to the respondent father. (Appeal from order of Erie County Family Court, Mazur, J. — abandonment.) Present — Dillon, P. J., Callahan, Doerr, Boomer and Moule, JJ.