The CAYUGA INDIAN NATION OF NEW YORK, By Its Chiefs, Franklin Patterson, James Leaffe, Vernon Isaac, Kenneth John and Frank Bonamie, Individually and as Members of the Cayuga Indian Nation of New York, Plaintiffs,

v.

Earl E. FOX; Robert E. White; William J. Kirk; Gail Kirk; Henry Wm. Koch; Barbara F. Koch; Thomas B. Masten, Jr.; John J. Conway; Henry Tamburo; County of Seneca, New York; Harry F. Amidon; Chairman of the Board of Supervisors; and County of Cayuga, New York, W. Bernard Craine, Chairman of County Legislature, Defendants.

No. 80–CV–1011.

United States District Court, N. D. New York.

July 29, 1982.

---

544

Wender, Murase & White, Washington, D. C., Meggesto & Meggesto, Syracuse, N. Y., for plaintiffs; Arthur J. Gajarsa, Kenneth A. Marra, Washington, D. C., Judy Lewis Meggesto, Syracuse, N. Y., of counsel.

Robert Abrams, Atty. Gen., State of N. Y., Albany, N. Y., for defendants White and Conway; Thomas J. Maroney, Asst. Atty. Gen., Syracuse, N. Y., of counsel.

Hale & Dorr, Boston, Mass., for Seneca County; James D. St. Clair, William F. Lee, Donald R. Frederico, Boston, Mass., of counsel.

Goodwin, Proctor & Hoar, Boston, Mass., for Cayuga County; Allan van Gestel, Boston, Mass., of counsel.

Karpinski & Stapleton, P. C., Auburn, N. Y., for defendant Fox; T. David Stapleton, Auburn, N. Y., of counsel.

Kirk & Mount, Waterloo, N. Y., for defendant Kirk; William J. Kirk, Waterloo, N. Y., of counsel.

Henry M. Koch, Seneca Falls, N. Y., for defendants Koch.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

On November 19, 1980, plaintiff Cayuga Indian Nation of New York by its Chiefs ("Cayuga Indian Nation" or "plaintiffs"), commenced a civil action in this Court against numerous named defendants, both individually and as representatives of a proposed class of landowners seeking, inter alia, a declaration of plaintiffs' ownership and right to possess certain real property allegedly reserved for them by the State of New York and located in Seneca and Cayuga Counties. *Cayuga Indian Nation v. Carey*, No. 80–CV–930 (N.D.N.Y.) (hereinafter, "the Cayuga land claim"). Later that day, the plaintiffs, pursuant to N.Y. CPLR § 6501 *et seq.*, filed Notices of Pendency with the County Clerk's Offices for Seneca and Cayuga Counties, which gave notice of the pendency of the Cayuga land claim in this federal district court and the effect of the action on the title to the real property involved. Both Notices incorporated by reference a listing of the landowners whose property would be affected together with a description of the property. Both Clerk's Offices received these Notices and began indexing the information provided by the plaintiffs. Despite the Cayuga Indian Nation's prior invocation of this Court's jurisdiction over the land in controversy and the existence of adequate means for challenging the sufficiency of the Notices of Pend-

ency by motion in this Court,[1] certain of the landowners whose property lies within the land claim area instituted two carbon-copy state court proceedings in an effort to block further indexing of the Notices. The state court plaintiffs, proceeding under Art. 78 of the N.Y. CPLR against the Clerks of Seneca and Cayuga Counties and without joining the Cayuga Indian Nation as a party, sought and obtained judgments which permanently enjoined the County Clerks from indexing the respective Notices of Pendency and further enjoined the Clerks to expunge from their records so much of the indexing as had been accomplished.

The Cayuga Indian Nation then commenced this separate but ancillary action for preliminary and permanent injunctive relief against the enforcement of the orders issued in the two state court proceedings. Plaintiffs contend that because the state court judgments were entered without the joinder or participation of the Cayuga Indian Nation and without regard for this Court's pre-existing jurisdiction over the underlying land claim, the orders deprived plaintiffs of their statutory rights without due process of law and unnecessarily interfered with this Court's prior and continuing jurisdiction over the *res*, or real property in controversy.

On December 15, 1980, this Court denied plaintiffs' request for a temporary restraining order. Thereafter, on December 23, 1980, this Court heard argument on plaintiffs' motion for a preliminary injunction. At the conclusion of that hearing, plaintiffs requested an evidentiary hearing. The hearing followed and was ordered consolidated with the trial on the merits, Fed.R. Civ.P. 65(a)(1). Now, after careful review of the testimony and evidence presented, together with the briefs and affidavits submitted by the parties and others appearing as amicus curiae, this Court is firmly convinced that the requested injunction is warranted and that the United States District Court for the Northern District of New York is the proper forum for all claims concerning the adequacy of the Notices of Pendency filed in the Indian land claim. The following shall constitute the findings of fact and conclusions of law in support of this decision.

## I. FACTS AND PROCEDURAL BACKGROUND.

As noted above, the Cayuga Indian Nation commenced their land claim litigation in this Court on November 19, 1980. The complaint in that action, 80–CV–930, named numerous State, corporate and individual landowners in Seneca and Cayuga Counties as defendants in their individual capacity and as representatives of a defendant class defined to include all landowners within the Cayuga Indian Nation's Original Reservation lands, as depicted on a map attached to the complaint. Later that day, plaintiffs filed separate Notices of Pendency with the Seneca and Cayuga County Clerk's Offices. Each of the Notices contained the caption of the underlying land claim and included the following information: (1) notice that the federal lawsuit had been commenced; (2) identification of the plaintiffs; (3) notice concerning the nature of the relief sought in 80–CV–930 and, (4) a list containing the names of both the named defendant landowners and the members of the proposed class of defendant landowners, together with a description of the land affected by the Cayuga land claim. The identification of the property owners and the description of the land affected by 80–CV–930 were contained in separate booklets that were incorporated by reference into the Notices of Pendency filed in each of the County Clerk's Offices. In sum, the Notices of Pendency were not limited in their scope to the defendants initially named in and served with the Complaint filed in 80–CV–930, but also listed all members of the as yet uncertified defendant class.

The Notice of Pendency filed in Seneca County reflects transfers of land which occurred prior to October 1979. The Notice filed in Cayuga County reflects transfers which occurred prior to January 1980.

---

1. N.Y. CPLR § 6514 (McKinney 1980).

Thus, as might be expected in a land claim of this magnitude, the Notices of Pendency may contain some information that is not fully current. With respect to the description of property affected by the land claim, the Notice filed in Seneca County contains the book (liber) and page numbers for the owners and property listed; the Notice filed in Cayuga County does not contain the same type of book and page references, but does identify the property by owner, and map, block and lot numbers maintained by the county tax office.

### A. Seneca County Proceedings

On November 22, 1980, defendants William and Gail Kirk and Henry and Barbara Koch sought to challenge their inclusion in the Notice of Pendency by commencing a proceeding under N.Y. CPLR Art. 78 in New York State Supreme Court (Seneca County) against Thomas Masten, the Seneca County Clerk. The petition requested a judgment enjoining the Clerk from indexing the Notice of Pendency on the grounds that the Notice was insufficient as a matter of law and neither the Koch's nor the Kirk's were named as parties in the Cayuga land claim. Petitioners further asserted that these irregularities deprived the County Clerk of jurisdiction to index the Notice. Pursuant to an order to show cause, the matter came on for hearing before the Hon. John Conway on December 1st and 2nd, 1980. Although the Cayuga Indian Nation was not joined as a party, the Nation's attorneys learned of the state proceeding and were present on the first hearing date. On that date, Judge Conway offered to permit the Cayuga Indian Nation to appear in the proceeding, and defendants Kirk and Koch stated that they had no objection to an adjournment to permit the Cayugas to prepare their case. However, the attorneys for the Cayugas declined to take any part in the state court proceedings on the ground that they had not been joined as parties and chose not to consent to the jurisdiction of the state court. Having declined to enter the state action voluntarily, the Cayuga Indian Nation had no further participation in the action.

On December 3, 1980, Justice Conway entered a decision-judgment enjoining the Seneca County Clerk from indexing the Notice of Pendency filed by plaintiffs. He further enjoined the Clerk to expunge from his records so much of the information as had been entered. The decision rested on the grounds that the Notice did not adequately describe the property affected by the Cayuga land claim and did not contain a list of the names of the defendants against whom the Notice was to be indexed. It appears that the booklet described above which plaintiffs filed as part of their Notice of Pendency was not included in the record of the Art. 78 proceeding before Justice Conway.

### B. The Cayuga County Proceedings

On December 11, 1980, defendant Earl Fox instituted a virtually identical Art. 78 proceeding in State Supreme Court, Cayuga County, seeking to enjoin Henry Tamburo, the Cayuga County Clerk, from indexing the Notice of Pendency filed in that County. Once again, the Cayuga Indian Nation was not joined as a party in the proceeding to challenge the adequacy of their Notice of Pendency. Although the plaintiffs learned of this state court action from newspaper reports, they did not participate in the hearing before the Hon. Robert White on December 15, 1980, the return date of the order to show cause in *Fox v. Tamburo*, No. 80–8296 (Sup.Ct., Cayuga County). On December 15, 1980, Justice White entered a decision and judgment similarly enjoining the Cayuga County Clerk from indexing plaintiffs' Notice of Pendency and an order directing the Clerk to expunge so much of the Notice as had already been indexed. Justice White rested his conclusion that the Clerk lacked jurisdiction to index the Notice on the sole ground that the Notice did not contain an adequate description of the property affected by the Cayuga land claim. It is not at all clear whether the booklet which plaintiffs filed as part of the Notice of Pendency in Cayuga County was a part of the record in the state court proceeding; in any event, the decision and judgment of the court make no mention of it.

## C. Proceedings in this Court

Following the issuance of Judge Conway's decision, but prior to the hearing before Judge White, plaintiffs commenced this action to enjoin enforcement of Judge Conway's order and to enjoin further proceedings before Judge White. This Court denied plaintiffs' request for a TRO, Judge White then issued his decision in the Cayuga County proceeding, and plaintiffs amended their complaint to conform the prayer for relief to the current state of the proceedings.

Plaintiffs contend that their statutory right to file notices of pendency in connection with the Cayuga land claim is a state-created property interest which is protected by the Due Process Clause of the Fourteenth Amendment, but was effectively extinguished by the state court judgments.

Plaintiffs contend that given this Court's prior jurisdiction over the controversy and the availability of adequate remedies in this Court, the entry and enforcement of judgments in state court actions in which plaintiffs were not joined as parties deprived plaintiffs of their rights without due process of law.[2] Plaintiffs also rest their claim for injunctive relief on the ground that the state court proceedings seriously interfere with this Court's prior jurisdiction over the land claim and will impede this Court's ability to adjudicate effectively the issues presented, since the state court judgments make possible the transfer of property during the pendency of the Cayuga land claim to non-parties who, in turn, will not be bound by the result of that suit.

Defendants assert a plethora of arguments in opposition to plaintiffs' claim. They assert that there is no substantial question presented; that because plaintiffs were invited to participate in the state proceedings, they were accorded due process; that the Court should abstain from enjoining the state court proceedings; that the Anti-Injunction Act prohibits entry of the requested injunction, and that plaintiffs should not be permitted to file Notices of Pendency in the Cayuga land claim. The Court has considered all of the defendants' arguments in opposition to plaintiffs' claims and will touch on several of them in the following discussion. However, this Court chooses to frame the issues as follows: (1) is this Court the proper forum for challenges to the adequacy of the Notices of Pendency; (2) if so, is an injunction against the enforcement of the state court judgments warranted under the circumstances and permissible under the Anti-Injunction Act, 28 U.S.C. § 2283?

## II. DISCUSSION

 The Cayuga Indian Nation filed the Notices of Pendency in order to avail themselves of a statutory right provided by New York law. New York law provides that where an action is commenced which seeks a judgment affecting title to real property, which the Cayuga land claim surely does, the plaintiffs have a right to file a notice of pendency, and this right obtains whether the action is filed in state or federal court. See N.Y. CPLR § 6501; Fed.R.Civ.P. 64; *Will of Sabatino*, 90 Misc.2d 56, 393 N.Y.S.2d 671, 673 (1977). The purpose of the notice of pendency is "to prevent the acquisition *pendente lite* of an interest in the subject matter of the suit, to the prejudice of the plaintiff because otherwise ... there would be no end to any suit, the justice of the court would be evaded and great hardship and inconvenience to the suitor would be necessarily introduced."

---

**2.** It appears that the state courts could not have obtained jurisdiction over the Cayuga Indian Nation without its consent to be haled into state court. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *Puyallup Tribe v. Washington Dept. of Game*, 433 U.S. 165, 172–73, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977). Indeed, a colorable argument can be made that the state courts lacked subject matter jurisdiction over validity, *vel non*, of the notices of pendency by virtue of 25 U.S.C. § 233 which, after granting the State of New York limited civil jurisdiction over Indians in the State, sets forth the following proviso:

"... That nothing herein contained shall be construed as conferring jurisdiction on the courts of the State of New York in civil actions involving Indian lands or claims with respect thereto which relate to transactions or events transpiring prior to (September 13, 1952.)

*Israelson v. Bradley*, 308 N.Y. 511, 127 N.E.2d 313, 315 (1955). In short, notice of pendency statutes manifest the public policy of the State of New York that a suitor's action shall not be impeded or defeated by an alienation of the subject property during the course of the lawsuit. Some of the defendants here contend that a notice of pendency is not necessary or proper in view of the plaintiffs' position in the land claim that all titles which derive from the challenged transactions with New York State are void and that subsequent purchasers cannot obtain good title to such property. This argument is wide of the mark; the Cayuga Indian Nation has availed itself of the right to file notices of pendency as a means of placing subsequent purchasers on notice of the pendency of the land claim and to bind purchasers to any judgment entered by this Court. Moreover, federal law provides that federal suitors must avail themselves of state notice of pendency statutes in order to gain the advantages of constructive notice. *See* 28 U.S.C. § 1964. In the absence of notices of pendency, plaintiffs may well find themselves faced with the prospect of relitigating the issues presented in the land claim against a host of non-party purchasers. In sum, the Court is persuaded that the provisional remedy provided by the notice of pendency statute was properly invoked by the plaintiffs.[3]

A. This Court is the Proper Forum for Challenges to the Notices of Pendency.

While the State court proceedings purport to affect only the *ultra vires* acts of a local officer, this Court cannot blink the direct impact of those proceedings on the jurisdiction of this Court and on the statutory rights of the Cayuga Indian Nation, which was not subject to the jurisdiction of the State courts.

■ Upon the filing of the Cayuga land claim on November 19, 1980, this Court acquired jurisdiction over the land claim controversy for the purpose of determining all questions relating to the subject matter of that lawsuit, and the fashioning of complete and effective relief. Having invoked the jurisdiction of this Court, the Cayuga Indian Nation was entitled under state and federal law to file notices of pendency. Under a plain reading of the New York statute, the proper forum for affected property owners who seek to cancel or correct a notice of pendency is the court in which the land claim is pending; here, the United States District Court for the Northern District of New York. Section 6514 of the CPLR sets out the procedure and grounds for the cancellation of notices of pendency.[4] The section authorizes "the court," upon the motion by an aggrieved person, to cancel a notice of pendency if, among other grounds, the plaintiff has failed to prosecute the action in good faith. The section further authorizes the court which orders cancellation of a notice of pendency to impose upon the plaintiff, "any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action." § 6514(b), (c). It seems clear enough, and

---

**3.** The Court finds no merit in defendants' argument that the filing of a notice of pendency restricts the use of the affected individual's property in such a manner as to require prior notice and an opportunity to be heard.

**4.** § 6514. Motion for cancellation of notice of pendency

(a) Mandatory cancellation. The court, upon motion of any person aggrieved and upon such notice as it may require, shall direct any county clerk to cancel a notice of pendency, if service of a summons has not been completed within the time limited by section 6512; or if the action has been settled, discontinued or abated; or if the time to appeal from a final judgment

against the plaintiff has expired; or if enforcement of a final judgment against the plaintiff has not been stayed pursuant to section 5519.

(b) Discretionary cancellation. The court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, if the plaintiff has not commenced or prosecuted the action in good faith.

(c) Costs and expenses. The court, in an order cancelling a notice of pendency under this section, may direct the plaintiff to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action.

we have been cited to no contrary authority, that the court in which the underlying action is pending is the only tribunal with the authority to enter either a finding of bad faith prosecution or an order awarding costs and expenses "in addition to any costs of the action." Adoption of any other view of the statute would encourage forum shopping and subject the litigants to the unnecessary risk of conflicting orders. This risk would be even greater in situations where, as here, the underlying action is pending in federal court but the proceeding to cancel a notice of pendency and impose costs is here in State court, for the simple reason that the state and federal court systems have separate appellate structures and the risk of conflicting orders would continue, absent the unlikely occurrence of simultaneous review in the United States Supreme Court.

■ Our conclusion that this Court is the only appropriate forum for resolving issues concerning the notice of pendency is confirmed by the only precedent which this Court has been able to uncover. *Frederick v. Baxter Arms Corp.*, 39 F.Supp. 609 (E.D. N.Y.1941). There, the defendants in a federal action brought a motion to cancel and discharge the notice of pendency of the federal action that had been filed in the Queens County Clerk's Office. Judge Abruzzo's opinion first acknowledges a letter-memorandum from the movant, "which states that the Supreme Court of the State of New York, Queens County, could not entertain a motion for an order to cancel the lis pendens for the reason that no action at any time was pending in the State Court and that therefore it has no power to deal with a lis pendens filed in connection with litigation pending in the United States District Court," and that the Clerk of the State court had informed the movant that an order of the federal court cancelling the notice would be recognized for the purpose intended. *Id.* at 610. Relying on Rule 64 of the Fed.R. of Civ.P. and the decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Judge Abruzzo held that:

> "Where a notice of pendency of action is filed in a county clerk's office, but the action is brought in the United States

Court, the application to cancel should be brought in the United States court and not in the state court. 38 C.J. 48. *See Matter of Miller*, 64 Misc. 467, 119 N.Y.S. 555.

*Id.* at 610. In sum, both reason and precedent support our conclusions that this Court first acquired jurisdiction over the Cayuga land claim and is the only proper forum for challenges to the notices of the pendency of that action.

It is equally clear that the state court plaintiffs had an adequate remedy in this Court pursuant to CPLR § 6514, *Baxter Arms Corp., supra.* Questions concerning the adequacy of the property descriptions contained in the Notices and the propriety of listing members of the proposed class of defendants are well within the ambit of issues raised under § 6514 in the court where the action is pending. *See e.g., Lake Louise Marie C. Ass'n. v. Lake Louise Marie Corp.*, 25 A.D.2d 475, 266 N.Y.S.2d 156 (3d Dept. 1966) (finding inadequate description of property affected by the action; plaintiffs entitled to an opportunity to correct errors); *Micheli Contracting Corp. v. Fairwood Associates*, 73 A.D.2d 774, 423 N.Y. S.2d 533 (3d Dept. 1979) (requisites of a notice of pendency in multiple defendant cases). Thus, not only did the State court plaintiffs have an adequate remedy in this Court, but we have not been cited to any case in the adequacy of a notice of pendency was tested under the guise of an Art. 78 proceeding before a court where no action was pending and which lacked jurisdiction over the party who filed the notice. This observation is not surprising when one considers that the cases view errors in a notice of pendency as curable, *Lake Louise Marie Corp., supra*, and only a court having jurisdiction over the subject matter and the necessary parties would be able to provide such direction.

B. An Injunction Against the State Court Proceedings is Necessary and Appropriate under the Circumstances and is not Barred by the Anti-Injunction Act.

■ The Due Process Clause of the Fourteenth Amendment requires "that dep-

rivation of life, liberty or property by adjudication be preceded by notice and an opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Here, the State of New York provided plaintiffs a statutory right to file notices of pendency so as to put subsequent purchasers on constructive notice of the Cayuga land claim and to prevent the evasion of this Court's orders and judgment. *Israelson, supra.* Plaintiffs exercised that statutory right, as they were entitled to do, in the Cayuga land claim action over which this Court first acquired jurisdiction. Plaintiffs may not be deprived of this statutory right without due process of law. *Logan v. Zimmerman Brush Co.,* —— U.S. ——, —— – ——, 102 S.Ct. 1148, 1154–55, 71 L.Ed.2d 265 (1982). Notwithstanding that plaintiffs' prior invocation of this Court's jurisdiction appeared on the face of the notices of pendency, state court proceedings to which plaintiffs were not parties have resulted in judgments extinguishing their Notices. In light of our earlier determination that this Court was and is the only proper forum in which to challenge these Notices of Pendency, it is no answer to say that because plaintiffs could have consented to the state courts' jurisdiction, their failure to do so constitutes a waiver of their Fourteenth Amendment rights. The County defendants' reliance on *ITT v. Alexander* 396 F.Supp. 1150 (D.Del.1975) for the proposition that the failure to join plaintiffs as parties in the state courts comports with due process is misplaced. In that case, the Tax Court was a proper forum for the proceedings in which ITT sought to participate, and it appeared that ITT lacked standing to litigate the issues in any forum. On those facts, the court held that ITT's right to participate in the action through third parties or as amicus satisfied the requirements of due process. Here, the Cayuga Indian Nation was deprived of its statutory rights by a court in which it was privileged not to appear and in disregard of the availability of a proper and available forum in this Court. Nor is it any answer to suggest that plaintiffs remain free to file a second set of Notices. As *Baxter Arms* makes clear, plaintiffs are entitled to have the adequacy of their original Notices determined by this Court, and should not be left to risk having to run the gauntlet of further state court interference with their invocation of provisional remedies.

The injunctive relief sought by plaintiffs is also necessary to prevent further interference with this Court's jurisdiction. Since this Court first acquired jurisdiction over the real property for the purpose of fully resolving the Cayuga land claim, this Court is entitled to exercise that jurisdiction to the exclusion of other courts. *See Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964); *Princess Lida v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939); *Bank of New York v. United States,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936). The judgments interfere with this Court's ability to insure that plaintiffs are able to comply with 28 U.S.C. § 1964 and to fashion a complete remedy because those judgments permit the transfer of affected property during the pendency of the Cayuga land claim without constructive notice to purchasers.

Defendants also argue that the requested injunction is barred by the Anti-Injunction Act, 28 U.S.C. § 2283, which provides:

A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

█ We disagree. The Act is designed to prevent "needless friction between state and federal courts." *Mitchum v. Foster,* 407 U.S. 225, 233, 92 S.Ct. 2151, 2157, 32 L.Ed.2d 705 (1972), quoting *Oklahoma Packing Co. v. Oklahoma Gas & Electric Co.,* 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 447 (1939). In recent years, the Supreme Court has made clear that the Act prohibits such an injunction against state court proceedings unless it comes within one of the three stated exceptions. *See Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 630, 97 S.Ct.

2881, 2887, 53 L.Ed.2d 1009 (1977).[5] This case fits comfortably within the second exception.

The "in aid of" exception to the Act has been read to allow a federal court to protect its prior jurisdiction over the *res* by enjoining a state court proceeding that interferes with the property. 1A Moore's Federal Practice ¶ 0.225 at 2617 (2d ed. 1981); 17 Wright, Miller & Cooper, Federal Practice and Procedure § 4225 (1978). This view is especially convincing where, as here, Congress has expressly withheld jurisdiction from New York State courts over civil actions "involving Indian lands or claims with respect thereto which relate to transactions or events transpiring prior to (September 13, 1952)." 25 U.S.C. § 233. Moreover, the Supreme Court has recognized some overlap between the "in aid of" and the "protect and effectuate" exception, and has construed the latter to mean that a state court may be prevented "from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).

Our conclusion that this case fits within the express exceptions to the Anti-Injunction Act finds strong support in *State Water Control Board v. Washington Suburban Sanitary Commission*, 654 F.2d 802 (D.C.Cir.1981). That case involved a controversy over the development of sludge disposal sites in the Washington, D.C. area in order to bring the local jurisdictions into compliance with federal environmental laws. After the district court endorsed the selection of a particular site that bordered two counties, one of the affected counties filed two state court actions seeking to block implementation of the chosen site. 654 F.2d at 806. One of the suits was premised on the discovery that the land involved was burdened by restrictive covenants which, it was alleged, would require a lengthy judicial proceeding to determine the class protected by the covenants and millions of dollars to acquire. *Id.* at 805 and n.6. *Prince Georges County*, alleging that the acquisition of the site would be so costly as to subject the WSSC Commissioners to liability for breach of fiduciary duty, secured a temporary injunction from one of the State courts forbidding the WSSC from proceeding with the acquisition of the designated site. *Id.* at 806. In response to this development, the district court enjoined the WSSC from complying with the state court injunction; ordered the County to withdraw from the state court suits, and ordered that any party seeking modification of the court's order designating the site was required to seek such modification only in the district court. *Id.* On appeal, the D.C. Circuit Court upheld the injunction against attacks premised on the Tenth Amendment and the Anti-Injunction Act. In reaching this result, the Court relied on both the "in aid of" and the "protect and effectuate" exceptions and expressly noted its agreement with the district court's direction that any aggrieved party seek relief only in the federal district court. 654 F.2d at 811, citing *New York State Assoc. for Retarded Children, Inc. v. Carey*, 456 F.Supp. 85, 97 (E.D.N.Y.1978).

---

**5.** Plaintiffs contend that the Act does not apply where, as here, the party seeking to enjoin state court proceedings is an Indian Tribe. They reason as follows: The Supreme Court has held that the Act does not apply where the United States is the party seeking the injunction. *Leiter Minerals v. United States*, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); the United States, as trustee for Indian Nations, may initiate lawsuits to protect their interests, *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); 28 U.S.C. § 1362 permits the Cayuga Indian Nation to seek the injunctive relief that the United States could have sought, and therefore the Act is equally inapplicable where, as here, the Nation litigates under § 1362 in its own right. *Moe, supra*, 425 U.S. at 470, 96 S.Ct. at 1639 (Indian Tribe is no more bound by the strictures of 28 U.S.C. § 1341 than the United States). On the particular facts of this case, we are persuaded that this argument is meritorious and provides an alternative ground for the conclusion that the requested injunction is not barred by the Anti-Injunction Act.

### III. RELIEF AND ORDER

■ Having determined that this Court is the only proper forum for challenges to the Notices of Pendency and having further determined that an injunction is necessary and appropriate to prevent irreparable harm to the plaintiffs and interference with this Court's prior jurisdiction over the res, we turn only briefly to the adequacy of the Notices of Pendency.

The proof at trial demonstrated that the Notice filed in the Seneca County Clerk's Office contained an adequate description of the property affected by the Cayuga land claim, including book and page numbers. Whatever objection might be urged concerning the inclusion of all members of the property owner class is no longer availing, since this Court has now certified the Cayuga land claim as a defendant class action. We do not wish to be misunderstood as holding that this Notice of Pendency is accurate in all of its particulars, for there was some evidence that mistakes exist. However, the plaintiffs have indicated their willingness to correct any substantial errors, and they are entitled to do this much. More importantly, this Court is not prepared on the present record to hold that any of the parties who appeared in the hearing on this matter have demonstrated substantial error with respect to their listing. It will suffice for present to emphasize that the plaintiffs and the class representatives are expected to use good faith efforts to resolve any substantial inaccuracies and, if necessary, to bring any remaining disputes to this Court. If any serious problems emerge, this Court has the power to appoint a special master to assist in the matter.

The situation is only slightly different with respect to the Notice of Pendency filed in the Cayuga County Clerk's Office. With exceptions that do not apply here, the statute requires only that the Notice contain "the names of the parties to the action, the object of the action and a description of the property affected," and that the Notice shall contain "a designation of the names of each defendant against whom the notice is directed to be indexed." CPLR § 6511(b).

According to the practice commentary accompanying § 6501, notices of pendency are indexed in one of two ways: "in counties where a block index is maintained—notably in New York City—notices are indexed to the blocks in which the property is located; in other counties, they are indexed in an alphabetical file against the defendants' names." It appears that Cayuga County indexes notices of pendency in an alphabetical file against the defendants' names. Plaintiffs' Notice contained the names of the members of the defendant class together with map, block and lot numbers that correspond to records maintained by the County Tax office. The Cayuga County Clerk testified that he had already been able to index the Notice against about one thousand names prior to entry of the state court order, and that the only difficulty that he had communicated to plaintiffs was the fact that the booklet did not list the names in alphabetical order. However, unlike the Notice filed in Seneca County, the Notice filed in Cayuga County did not contain so-called "book and page" references, which apparently pertain to other property indexes maintained by the Clerk's office. According to the testimony of Marvin Montgomery, a professional engineer employed by plaintiffs to prepare the Notices, one would only need the name of the owner or the map, block and lot numbers in order to go to the tax office and find the book and page reference to the property. On this record, the Court finds that the Notice contains an adequate description of the property to permit the indexing of the Notice to continue; if the need for book and page numbers in Cayuga County is believed to be great and ascertainment practicable, any aggrieved party may seek further orders from this Court.

For all of the foregoing reasons, it is Ordered, Adjudged and Decreed, that the plaintiffs shall have judgment and the defendants shall be and hereby are permanently enjoined as follows:

1. The entry and enforcement of the judgments entered in *Kirk v. Masten*, No. 20464 (Sup. Ct. Seneca County, December 3,

1980) and *Fox v. Tamburo*, No. 80–8296 (Sup. Ct. Cayuga County, December 15, 1980) have directly interfered with this Court's prior jurisdiction, and unless enjoined will impede the ability of this Court to render full and effective relief in *Cayuga Indian Nation v. Carey*, 80–CV–930 and will deny plaintiffs' their protected rights without due process of law;

2. Defendants Thomas B. Masten, Jr., Henry Tamburo, together with their successors in office, their employees and any person acting in concert with either are permanently enjoined from complying with the injunctions and judgments issued by the state courts in the actions described in ¶ 1 of this Order, and they are further enjoined and directed to proceed expeditiously with the indexing of the Notices of Pendency previously filed in their offices bearing Index Nos. 20456 (Seneca County) and 80–8296 (Cayuga County);

3. Defendant Earl Fox is enjoined from proceeding further or enforcing the judgment entered in the state court action described in ¶ 1 of this Order (*Fox v. Tamburo*);

4. Defendants William and Gail Kirk and defendants Henry and Barbara Koch are enjoined from proceeding further or enforcing the judgment entered in the state court action described in ¶ 1 of the Order (*Kirk v. Masten*);

5. All parties to this action and all parties to 80–CV–930, (the consolidated Cayuga land claim now pending in this Court) are permanently enjoined from initiating any state court proceeding concerning the Notices of Pendency identified in ¶ 2 of this Order, and they are further enjoined from initiating any state court proceeding which would frustrate this Order;

6. Any party to this action, (80–CV–1011) as well as any party to the Cayuga land claim (80–CV–930), believing that modification of the Notices of Pendency identified in ¶ 2 of this Order is necessary is enjoined and ordered to seek such modification only in this court and then, only after having undertaken a good faith effort to resolve the matter informally;

7. Any of the parties to the actions identified in ¶ 6 of this Order who believes that modification of this Order is required, is enjoined and ordered to seek such modification only in this Court or in the United States Court of Appeals for the Second Circuit.

IT IS SO ORDERED.