OPINION OF THE COURT
Harold Hyman, J.
In this matter there are two motions before this court for determination, one of which is of first impression.
The primary motion is brought by the Lienor’s Committee “at the foot of the judgment of foreclosure and sale” entered in this action on June 29, 1979, “to vacate and discharge of record a certain deed to real property dated June 21, 1979 made by defendant, Bay View Towers Apartments, Inc., to Wilmington Orlando Sy Corp., which was recorded in the office of the Register of the City of New York, Queens County Division, on June 29, 1979.”
The other motion, which brings to the forefront the matter of first impression, is as to the constitutionality of a *1089 section of the real property transfer tax statutes of the City of New York. This is occasioned by the City of New York seeking an order vacating the stay of an administrative hearing provided for under such statute now before the Commissioner of Finance of the City of New York; and, further, to order the administrative hearing to proceed without the participation of certain named attorneys who appeared on behalf of Wilmington Orlando Sy Corp. but whose appearance the City refuses to recognize, and to dismiss the cross motion of the Lienor’s Lawyers Committee for its failure to serve a complaint in its action brought for a declaratory judgment within 20 days of the entry of the order of the court dated February 4, 1983.
Dealing first with the latter, the City of New York’s motion, it appears to this court that denial must be considered on several grounds which will be separately discussed hereafter.
It is uncontradicted by the papers submitted by the City that at no time has it ever served a copy of the order of February 4, 1983, with notice of entry thereof, upon its adversaries as is procedurally required.
Also, it is the opinion of this court that since the focus of the entire litigation at this point is a certain deed-conveyance of the real property executed to and recorded by Wilmington Orlando Sy Corp., that said grantee corporation is a “necessary party” to any such proceeding and, as such, it is entitled to notice of the present application being made by the City of New York, since said corporation is and would be entitled to counsel of its own choice and, procedurally by failing to make said grantee a party to this motion, the City of New York would deprive said corporation of its constitutional rights and entitlements to due process.
Likewise, the City of New York should be more importantly and cautiously concerned as to whether any hearing regarding the “Transfer Tax” is actually necessary or should even be held, given the facts and figures at its command; particularly so since as to such facts it has been fully informed from the inception, that is, from the very date the conveyance was recorded, and, on which date the real property transfer tax return was filed (June 29,1979). *1090 In addition, some of the most detailed pertinent information was offered to and was supplementally supplied to the City by representatives of the grantee and also by the (Mechanic) Lienor’s Committee.
All of the requisite information upon which the Director of Finance (City) could have based a fair “determination” is likewise fully detailed in the foreclosure proceedings conducted before this court. In said foreclosure actions the City of New York was made a party and had been duly served; had been given due notice of all proceedings; that documentation has at all times been and still is available to it for inspection and examination by the Director (City). Said foreclosures have been in litigation five years and four years respectively. The notices of pendency of actions had been duly filed in the county clerk’s office (Queens County) with regard to said foreclosures, and have been of record since November 15, 1974 and October 17, 1975, respectively, and duly renewed as required by law, prior to the inception of the controversial conveyance and the alleged transaction which the City of New York now seeks to question for real property transfer tax purposes by determining it to be one “in lieu of foreclosure.” As an aside, the City of New York first imposed the issue more than two years and four months after the “deed-conveyance” had been on record and the transfer tax return had been filed, by seeking to tax the transfer (deed), in its mistaken “determination” that such deed was a conveyance “in lieu of foreclosure.” A cursory examination of the comprehensively complete factual documentation available to the City, both in the foreclosure actions and the record in the City Register’s office, completely proves the said “determination” to be without merit not only factually, but “as a matter of law.”
Furthermore, the City had been a necessary party defendant in both foreclosure actions; it therefore received such notice as was required throughout the entire foreclosure proceedings, inclusive of the sale by the referee held on August 1,1979, and the confirmation of the referee’s report thereafter.
What is also of greater factual and legal importance is the fact that Wilmington Orlando Sy Corp. was never *1091 either a party plaintiff or defendant in the foreclosure actions, nor was it a mortgagee, or a lienor of the premises in question, at any time. Therefore, when the questioned conveyance was executed, delivered, and thereafter recorded (on June 29, 1979) (incidentally on the very date the judgment of foreclosure and sale was signed by the court), said conveyance, as a matter of law, could only have been fully subject to the foreclosure proceedings, and the notices of pendency of action with regard thereto. (RPAPL 1331; CPLR 6501; Cayuga Indian Nation v Fox, 544 F Supp 542 [DCNY]; Mechanics Exch. Sav. Bank v Chesterfield, 34 AD2d 111.) It is further noteworthy that the conveyance-deed Wilmington received and recorded also clearly indicates that it was subject to both the mortgage and the mechanics’ liens since neither was to have merged in the fee.
The referee in foreclosure and following the sale, reported that there was a considerable deficiency left on the bond and mortgage, namely $50,240,756.44, without taking into consideration the mechanics’ liens, which also had to be paid by the purchaser at the foreclosure sale as liens with priority to the mortgage (so held by the Appellate Division in HNC Realty Co. v Bay View Towers Apts., 92 Misc 2d 151, mod 64 AD2d 417), and which priority amounted to approximately another $11,000,000 plus accrued interest of about another 30% ($3,300,000), making the lien priority of $14,300,000 due to the mechanics’ lienors.
With knowledge of these facts and figures, therefore, it should have been obvious to the Director of the Department of Finance of the City of New York (Bureau of Tax Collection) that its inordinately belated “determination” (made Jan. 11, 1982, two and one-half years and five months after the foreclosure sale of Aug. 1, 1979) was grossly and excessively incorrect, as well as without factual foundation. What is more, neither the City nor its Director of Finance makes the slightest excuse or explanation for its inordinate delay in making the “determination”; neither denies the obvious failure to examine the documentation at its command, nor that anything was done which would in any respect show diligent investigation in attempting to fairly determine the matter.
*1092 The statute in effect at the time of the questionable conveyance and transfer tax return (June 29, 1979) was title I of chapter 46 of the Administrative Code of the City of New York (Special City Taxes — Real Property Transfer Tax). Section 146-2.0 thereof speaks of the imposition of such tax being “at the rate of one-half of one per centum of the net consideration.” The “net consideration” is defined by subdivision 5 of section 146-1.0, which proves as follows: “5. Net consideration. Any consideration, exclusive of any mortgage or other lien or encumbrance on the real property or interest therein which existed before the delivery of the deed and remains thereon after the delivery of the deed.” (Emphasis added.)
True, section 146-3.0 places the burden of proving any prior liens or encumbrances upon the taxpayer, but here the “return” and the facts deemed known to the City indicate that such burden was met by the grantee since all facts relevant to substantiating the grantee’s alleged position were known, should have been known, or were (are) deemed to have been “actually” known by the City of New York, as a matter of law. The facts were certainly clearly made known by the notices of pendency and by the foreclosure proceedings in which the City of New York was a necessary party defendant.
In addition, the City of New York had more than a mere ample opportunity to make its “determination of the tax” much before two and one-half years after receipt of the return. Section 146-5.0 “Returns”, of the statute aforecited, provides that the return shall be filed with the Director of Finance at the time “before the recording of the deed” (subd a); and that “Upon the filing of such return”, “[t]he director of finance may require amended returns to be filed within twenty days after notice” (subd c); which returns “if * * * incorrect or insufficient shall be determined by the director * * * from such information as may be obtainable” (Administrative Code, § 146-7.0). Here, without question, the City of New York was a participant, a party defendant, a necessary party in the foreclosure action. The Director was required to give notice of the “determination” to the person against whom the tax is assessed (Administrative Code, § 146-7.0). Since this section of the statute does not *1093 provide for a specific time within which the Director (City) is required to make his determination, such period must then be construed to mean within a “reasonable” period of time. Two and one-half years cannot be considered “a reasonable period of time” nor can two years and three months be considered “a reasonable period of time.” This is more particularly so since all pertinent information was either actually known to the City, but if not it had knowledge of documentation from which information was easily and readily obtainable. This court believes the foregoing inordinate periods cannot be considered “reasonable” in either instance, particularly so since it deals with real property, which could encompass the rights of a purchaser in good faith, who could be seriously and adversely affected while the Director (City) makes up his mind.
Leaving the “time” uncertain, creates the need for the inference of the terminology “a reasonable period of time”; but even with such inference there is such a variance in what “a reasonable period of time” is as to leave the question as to what is meant incapable of a definitive answer (People ex rel. Rodgers v Coler, 166 NY 1, 24-25).
Should the issue of “reasonable time” be left to the determination of the judiciary? This court believes it cannot, for here again it would be uncertain of definitive and similar application in all instances. What may be “reasonable” under one circumstance may not be under different circumstances.
The substantive purpose and subject matter of the transfer tax, especially one as to real property, is of such nature of importance as to require a very short and definite time standard within which the City be required to make its “determination” for, if otherwise, it could lead to dire and unfair financial loss in the field of purchasing and selling real property. It could lead to a complete standstill in real estate transactions for fear of adverse determinations being made an inordinate period of time after purchase or sale or even after receipt of a mortgage. It could actually lead to real estate transactional chaos.
It is true that a statute must be read and given effect as it is written by the Legislature, not as the court may think it should be written (People ex rel. Whalen v Woman’s *1094 Christian Assn., 56 AD2d 101, 44 NY2d 466; Lawrence Constr. Corp. v State of New York, 293 NY 634), but the construction cannot lead to absurdity, nor blindly to absurd results (Williams v Williams, 23 NY2d 592). Likewise, since the courts have no authority to supply omissions from statutes (Eastern Paralyzed Veterans Assn. v Metropolitan Transp. Auth., 79 AD2d 516), nor may the judiciary revise the statute by insertion of clauses which could render it more enforceable (People v Briggs, 193 NY 457), all that remains for the judiciary is to declare the inoperative part unconstitutional for absurdity, ambiguity or indefiniteness, and to sever such part from the remainder of the statute where the statute, as a whole, permits separability (RKO-Keith-Orpheum Theatres v City of New York, 285 App Div 374, revd on other grounds 308 NY 493), as this statute does (Administrative Code, § 146-19.0).
This court is of the opinion that such an effect was never intended by our local legislative branch of government. The subject statute should be accordingly amended, but, until it is, the part of the statute, section 146-7.0, is deemed invalid for indefiniteness, absurdity and is unconstitutional. The remainder of title I, however, shall not be affected since the over-all titled statute provides for separability under circumstances such as these.
The City of New York’s motion is denied.
The motion of the Lienor’s Committee also cannot, at this time, meet with success.
Although it is apparent that the deed-conveyance in question did not or could not in any way have had an effect upon the foreclosure of the real property, it might have had some effect upon “surplus money proceedings” had the sale in foreclosure been more than sufficient to meet all taxes, mortgage, interest, lien and foreclosure expenses. At that point there might have been a serious issue; since it did not so result there really is no issue except procedurally. The right of the Wilmington Orlando Sy Corp. to due process as a necessary party to any procedural method to invalidate or recall the deed is obvious. There cannot be a valid judicial determination leading to the result sought without making the recipient of the deed, whose name is set forth therein as grantee, a party. No matter what is now said as *1095 to its purpose, whatever the actual intent of the parties was in the execution and delivery of the conveyance, the grantee must be made a party to any procedural process used seeking removal of said conveyance as “a cloud on title.” Whether this can be done by moving at the foot of the judgment of foreclosure and sale or by way of a separate new action is not herewith determined, although the latter would appear to be more feasible under the circumstances.
The motion of the Lienor’s Committee is also denied, but without prejudice to its renewal or by a proceeding by separate new action to remove a cloud upon title, if so advised.